**Carl Stephen THOMAS,**
**Plaintiff–Appellant,**

v.

**J.W. HUMFIELD, et al.,**
**Defendants–Appellees.**

No. 89–2776.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1990.

Carl Stephen Thomas, Houston, Tex., pro se.

Ester L. Hajdar, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before RUBIN, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

**PATRICK E. HIGGINBOTHAM,**
Circuit Judge:

Carl Stephen Thomas brought this civil rights suit, *pro se*, against employees and officials of the University of Houston. He appeals from a dismissal for failure to state a claim and for lack of proper service of process. His main contention is that the district court erroneously declared him incompetent and appointed a *guardian ad litem* without affording him a hearing. We reverse and remand for a competency hearing.

## I.

Thomas alleges that as a graduate student at the University of Houston he was harassed by campus police and other university personnel because he is black and because he exercised his constitutional rights to free speech, association, and religion. As he makes clear in his complaint, Thomas believes himself to be called by God to minister to the Asian population. It was while ostensibly attempting to minister to the Asian women on the Houston campus that Thomas prompted numerous complaints, many of which lead to encounters with campus police and other university personnel. Several of these encounters resulted in Thomas's arrest. For example, Thomas was arrested on an indecent-exposure charge, which was later dismissed. Thomas claims the arrests were the product of exaggerated or manufactured allegations. He brought this suit *pro se* under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 against thirty-seven employees and officials of the University of Houston.

Thomas initially served proper process on four of the thirty-seven defendants. Shortly after Thomas filed his complaint, those four defendants filed motions requesting that Thomas be given a psychiatric examination pursuant to Fed.R.Civ.P. 35(a) and that a *guardian ad litem* be appointed for him pursuant to Fed.R.Civ.P. 17(c). The parties based these motions on a transcript of a 1981 Texas–Board–of–

Law–Examiners hearing regarding Thomas's mental and emotional fitness to practice law. *See Thomas v. Kadish*, 748 F.2d 276 (5th Cir.1984). Finding good cause, the court ordered Thomas to undergo a psychiatric evaluation. Based on evaluations by two doctors, the district court found Thomas incompetent to continue his suit and ordered the appointment of a *guardian ad litem*. Accordingly, in November of 1986, the magistrate appointed an attorney to represent Thomas.

The guardian's first apparent act in carrying out his duties occurred two years after his appointment, when he improperly served Thomas's original unamended complaint on twenty-two of the defendants. In May of 1989, at a pretrial conference, the defendants moved to dismiss for lack of proper service as to the twenty-two defendants and for failure to state a claim as to the other four. Seven defendants were never served at all. The district court granted the motions and dismissed the case.

## II.

■ Our question is whether the district court erred in failing to provide Thomas a hearing before declaring him incompetent and appointing a *guardian ad litem*.[1] At a minimum, the due process clause of the Fifth Amendment requires some hearing. Thomas doubtless had a protected liberty interest in pursuing the suit as a principal. The declaration of incompetence endangered his "good name, reputation, honor, or integrity," *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), and deprived him of the power to control the lawsuit:

> A guardian ad litem is authorized to act on behalf of his ward and may make all appropriate decisions in the course of the specific litigation.... [T]he guardian may make binding contracts for the retention of counsel and expert witnesses and may settle the claim on behalf of his ward.

*United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir.1986) (citation omitted).

---

1. We do not address a situation where a party is under an existing guardianship or has otherwise

been judicially found to be incompetent.

Given a cognizable liberty interest, the considerations set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), govern the type and the scope of the process due Thomas:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requisites would entail.

We are persuaded that the appointment of a *guardian ad litem* here deprived Thomas of due process.

In May of 1986, the defendants moved for appointment of a *guardian ad litem* under Rule 17(c) or, in the alternative, for a psychiatric examination of Thomas under Rule 35(a). Thomas responded; the defendants filed a supplementary brief. On June 13, without hearing argument, the district court ordered Thomas to undergo psychiatric and psychological examinations. A psychiatrist and psychologist chosen by the defendants conducted the examinations. On October 23, 1986, after reviewing the reports, the district court declared Thomas incompetent. Thomas received no notice other than that provided by the motion filed on May 16; he had no opportunity to review the psychiatric and psychological reports on which the court relied; and he had no opportunity to argue or present evidence.

The hearing required to determine whether a litigant is competent is not universal. *See Morissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."), *quoted in Mathews*, 424 U.S. at 334, 96 S.Ct. at 902. A full adversary hearing probably is not neces-

sary, however. The appointment of a *guardian ad litem* deprives the litigant of the right to control the litigation and subjects him to possible stigmatization, but it does not altogether deprive him of his day in court. Nonetheless, due process mandates some type of hearing. Moreover, providing a litigant the opportunity to review and rebut his opponent's allegations and to introduce written or testimonial evidence of his sanity would not unduly burden the district court and would improve the accuracy of its determination. Thus, at a minimum, Thomas should have been given notice and an opportunity to be heard.

### III.

■ We have said that a due process hearing is required, but the question remains whether federal law or state law determines the substantive definition of competence and the specific procedure for determining competence. The relevant Federal Rule of Civil Procedure does not specify what law governs the *guardian ad litem* determination. Rule 17(c) states in pertinent part that

> [a]n infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Thomas contends that, as under Rule 17(b),[2] under Rule 17(c) the law of the litigant's domicile determines whether he is incompetent and in need of a *guardian ad litem*. Thus Thomas argues that, while the Federal Rules do not explicitly provide that an "incompetent person" under Rule 17(c) is one who is without capacity to sue under Rule 17(b), we should so read them. Although we have addressed the relationship between Rules 17(b) and 17(c) in other

---

**2.** Fed.R.Civ.P. 17(b) provides in relevant part that "[t]he capacity of an individual, other than one acting in a representative capacity, to sue shall be determined by the law of the individual's domicile."

contexts, the precise issue presented in this case—whose law determines a person's mental competence to represent himself for the purposes of Rule 17(c)—has never been squarely addressed in this circuit or in any other. *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1571 (1990) (discussing cases dealing with relationship between Rules 17(b) and 17(c) in the context of determining whether federal court should recognize legal competence of persons to litigate *on behalf of others* ).[3] Professor Moore, however, states the following rule with regard to individuals seeking to litigate in federal courts on their own behalf: "If [the law of an individual's domicile] denies the individual capacity upon the ground that he is an infant or an incompetent person, the litigation of his rights in the federal courts is subject to the provisions of Rule 17(c)." 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 17.26, at 17–210 (2d ed. 1989) (citing *Donnelly v. Parker,* 486 F.2d 402, 406–07 (D.C.Cir.1973) (implicitly assuming that law of domicile determines competence to represent oneself under Rule 17(c)). Thus, according to Professor Moore, the law of an individual's domicile determines the individual's competence to sue on his own behalf for the purposes of Rule 17(c). We agree and adopt that interpretation here. Thus, in the context of someone seeking to pursue litigation in federal court on his own behalf, we interpret the term "incompetent person" in Rule 17(c) to refer to a person without the capacity to litigate under the law of his state of domicile and, hence, under Rule 17(b).

■ Even as we accept that construction of Rule 17(c), however, we reject the notion that in determining whether a person is competent to sue in federal court a federal judge must use the state's procedures for determining competency or capacity. For example, Texas law provides that "[m]inors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by 'next friend.' " Tex.R.Civ.P. 44. Thus a person domiciled in Texas who is of unsound mind by Texas standards would be incompetent to bring a diversity suit in federal court. However, nothing in Rules 17(b) or 17(c) requires that the threshold determination whether a litigant is of unsound mind be made according to Texas procedures, and a federal procedure better preserves the integrity and the interests of the federal courts. In sum, we are persuaded that the district court must conduct a hearing to determine whether Thomas is competent to litigate this case and, in so doing, may apply any procedure that meets the requirements of due process.

Defendants argue that, as to all but the four defendants who were served properly, Thomas's claims are time barred. However, we do not have enough facts before us to rule on that issue. Therefore, on remand we instruct the district court to determine the applicable statutes of limitation and to make the findings of fact and law necessary to determine whether those limitation periods have run or whether they have been tolled because of Thomas's incompetence.

REVERSED and REMANDED for proceedings consistent with this opinion.

---

**3.** *Compare Slade v. Louisiana Power & Light Co.,* 418 F.2d 125, 126 (5th Cir.) (if state-appointed guardian of minor children lacks capacity to sue for those children under state law, he lacks the capacity in federal court as well under Rules 17(b) and (c)), *cert. denied,* 397 U.S. 1007, 90 S.Ct. 1233, 25 L.Ed.2d 419 (1969) *with Fallat v. Gouran,* 220 F.2d 325, 328 (3d Cir.1955) ("Rule 17(b) seems to refer to the law of the state of the forum … [whereas Rule 17(c) ] apparently gives a guardian the right to sue in federal courts *irrespective* of his capacity under state law.") (emphasis in original); *Travelers Indemnity Co. v. Bengtson,* 231 F.2d 263, 265 (5th Cir.1956) (right of unrepresented minor to sue by next friend or by *guardian ad litem* pursuant to Rule 17(c) is in no way dependent upon capacity of *guardian ad litem* under state law).