KELLY, Judge.
In March 2001, at the age of seventy-nine, J. Morgan McJunkin was deprived of his right to contract, to gift or dispose of property, to sue and defend lawsuits, to manage property, and to apply for government benefits when he was declared to be incapacitated. In October 2003, through counsel, he filed a Suggestion of Capacity. After an evidentiary healing, the trial court only partially restored Mr. McJun-kin’s rights. We reverse and direct the trial court on remand to enter an order of restoration of capacity which fully restores Mr. McJunkin’s rights.
The doctor the court appointed to examine Mr. McJunkin testified that Mr. McJunkin was capable of exercising all of the rights that had been removed from him and opined that, not only should Mr. McJunkin be restored to capacity, but it was doubtful that he was ever incapacitated. A clinical psychologist who examined Mr. McJunkin testified that the examination of Mr. McJunkin in 2001 was flawed, that Mr. McJunkin met the criteria for competency in all categories, and that his capacity should be restored. A number of lay witnesses also testified variously that the original deprivation of Mr. McJunkin’s rights was a “travesty of justice” or “stupid,” that he was capable of managing his own affairs, and that he was “completely competent.” Mr. McJunkin’s depositions, one videotaped, and his trial testimony are consistent with the picture painted of him by the testimony of witnesses. The only witness offered in opposition to Mr. McJunkin’s suggestion of capacity was, ironically, his former attorney ad litem who offered no opinion as to Mr. McJun- *963 kin’s capacity except to say that he did not see any change since the guardianship proceedings were initiated.[1] Remarkably,, in the face of the uncontradicted evidence that Mr. McJunkin should be restored to full capacity, the trial court declined to do so. The trial court apparently relied on testimony that Mr. McJunkin had agreed to, and would benefit from, having professional assistance managing some of his property, presumably to guard against making the type of imprudent investments that prompted his sons to have him declared incapacitatéd.
Section 744.102(10), Florida Statutes (2003), defines an “incapacitated person” as “a person who has been judicially determined to lack the capacity to manage at least some of the property ... of such person.” Florida Statutes do not define “capacity.” They do however provide a clue as to what it is not. Before being-amended in 1989, chapter 744, Florida Statutes, contained language to describe an “incompetent” person as one “likely to dissipate or lose his property.” § 744.331(1), Fla. Stat. (1987), After the statute was amended, “incompetent” became “incapacitated” and the reference to losing or dissipating property disappeared. See Ch. 89-96, §§ 1-112, at 173-224, Laws of Fla. It is evident that under the current version of the statute, before depriving an individual of “all their civil and legal rights,” the individual must be incapable of exercising his rights at all, whether wisely or otherwise. See § 744.1012. ,
This case is similar to In re Maynes-Turner, 746 So.2d 564 (Fla. 3d DCA 1999). There, as here, the examining doctor reported objective findings consistent with full competency but both he and the trial court “expressed paternalistic feelings about the possibility that [Mayes-Turner] might make future harmful decisions.” Id. at 565. We repeat the caution stated in Maynes-Tumer that'“[i]n our present day paternalistic society we must take care that in our zeal for? protecting those who cannot protect themselves we do not unnecessarily deprive them of some rather precious individual rights.” Id. (quoting In re McDonnell, 266 So.2d 87, 88 (Fla. 4th DCA 1972)). As was the case in Maynes-Tumer, absent some paternalistic notion that Mr. McJunkin might make some decisions that could harm him, the doctors that examined Rim found that he should be restored to full capacity. Accordingly, it was error for the trial court to do otherwise.
Reversed and remanded.
FULMER and WHATLEY, JJ., Concur.

. We note that the order of incapacity was not appealed, and of course, it is not properly before us in this appeal. Nevertheless, we are troubled by the apparent lack of due process that was afforded to Mr. McJunkin in that proceeding, including the failure of the trial court to advise him of the right to choose his own attorney and the apparent failure of his attorney ad litem to act as an advocate for him in those proceedings.or during the guardianship.