Carol Wild ("the wife") appeals a divorce judgment. Her main contention is that the trial court committed reversible error by failing to afford her a hearing before finding her incompetent and appointing a guardian ad litem to represent her. We agree and, therefore, reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.
On December 20, 2001, the wife sued John Irving Wild ("the husband") for a divorce. The husband answered and counterclaimed for a divorce. Thereafter, the case proceeded to trial before the trial judge in May 2003. On July 1, 2003, the trial court entered a judgment. Among other things, the judgment awarded primary physical custody of the parties' minor child to the wife, granted visitation to the husband, ordered the husband to pay the wife $800.00 per month in child support, and awarded the marital home to the wife. On July 22, 2003, the husband moved the trial court to alter, amend, or vacate the judgment or, in the alternative, to grant a new trial. On August 6, 2003, the wife also moved the trial court to alter, amend, or vacate the judgment or, in the alternative, to grant a new trial. In response to those motions, the trial court entered an order on October 1, 2003. That order vacated the judgment entered on July 1, 2003, insofar as it divorced the parties and granted a new trial regarding all other issues. However, it provided that the award of custody and child support to the wife would remain in effect as a pendente lite ruling.
On February 5, 2004, the husband moved the trial court to terminate the award of pendente lite custody and child support to the wife and to award pendente lite custody and child support to the husband. The trial court held a hearing on *Page 1038 
April 14, 2004, at which the trial court heard the arguments of the parties' attorneys but did not receive any evidence. Thereafter, the trial court entered an order on May 17, 2004. That order, which was titled "Final Judgment," divorced the parties and incorporated by reference all of the provisions of the judgment entered on July 1, 2003, except those pertaining to child custody, visitation, and child support and stated that a further hearing would be held regarding those issues. The order also stated that a hearing would be held regarding whether the parties had performed the pendente lite obligations imposed on them by the judgment entered on July 1, 2003. Finally, the order noted that it had been informed that the parties' minor child was living with the husband and, therefore, the trial court ruled that the husband's motion seeking pendente lite custody was moot.
On August 9, 2004, the wife moved the trial court to enter a final judgment regarding child custody, visitation, and child support and to find the husband in contempt for allegedly failing to make certain pendente lite payments to the wife. The husband filed an emergency motion seeking to have the marital home sold. The trial court conferred with the parties' attorneys regarding those motions and other matters at a conference on August 12, 2004. The parties were not present at this hearing. On September 21, 2004, the trial court entered an order that, among other things, stated that the order entered on May 17, 2004, was not a final judgment; found that the husband had failed to pay the wife certain payments he owed the wife; ordered that the marital home be sold and the proceeds of the sale be paid into court; ordered that the father would have pendente lite custody of the parties' minor child; granted the wife's attorney leave to withdraw; appointed a guardian ad litem to represent the wife; ordered the guardian ad litem to secure the services of a psychologist to examine the wife and evaluate her mental capacity; and ordered the wife to submit to the examination and evaluation by the psychologist. Subsequently, the trial court ordered that the psychologist's fee would be paid from the proceeds of the sale of the marital home.
On January 4, 2005, the wife wrote the trial court and requested that the trial court allow her to represent herself and grant her access to all documents in the record. In response to that letter, the trial court entered an order on January 6, 2005. In pertinent part, that order stated:
 "Based upon the evaluation prepared by [the psychologist], the Court finds that [the wife] is not competent to represent herself in this matter. Her request to proceed pro se is DENIED. Accordingly, [the wife's guardian ad litem] is hereby appointed as [the wife's] guardian ad litem for the expanded purpose of providing the wife with legal representation until the conclusion of this matter.
 "The Court further ORDERS that [the psychologist's] report be made a part of the record in this case. The Clerk of Court shall maintain said report in strict confidence and under seal. Said report shall be made available only to [the wife's] guardian ad litem . . . and to [the husband's attorney]. Neither of the attorneys shall permit the report to be reviewed by any other individual unless so ordered by this Court."
(Emphasis added.)
After the marital home was sold and the proceeds paid into court, the trial court entered an order on March 7, 2005, partially disbursing the proceeds. On March 9, 2005, the trial court entered a judgment. The judgment, among other things, awarded primary physical custody of the parties' *Page 1039 
minor child to the husband and granted the wife visitation. The judgment stated that child support was not being awarded due to the wife's financial condition.
On April 7, 2005, the wife moved the trial court to vacate the judgment entered on March 9, 2005, and requested a hearing on her motion. That same day, the trial court entered an order denying the wife's request for a hearing and denying the wife's postjudgment motion. Thereafter, the wife timely appealed to this court.
On appeal, the wife argues that the trial court committed reversible error by failing to afford her a hearing before finding her incompetent and appointing a guardian ad litem to represent her. In support of her argument, she cites Thomasv. Humfield, 916 F.2d 1032 (5th Cir. 1990). In that case, Thomas, a student at the University of Houston, acting pro se, sued 37 employees and officials of the university. Four of the defendants moved the trial court to order that Thomas be given a psychiatric examination and that a guardian ad litem be appointed to represent Thomas. The defendants based their motions on the transcript of a hearing before the Texas Board of Law Examiners regarding Thomas's mental and emotional fitness to practice law. Finding good cause, the trial court ordered Thomas to undergo a psychiatric examination. Based on evaluations by a psychiatrist and a psychologist, the trial court found Thomas incompetent to control his lawsuit and appointed a guardian ad litem to represent him. Subsequently, the trial court granted motions to dismiss filed by the defendants, and Thomas appealed to the United States Court of Appeals for the Fifth Circuit.
On appeal, Thomas argued that the trial court had committed reversible error by failing to afford him a hearing before finding that he was not competent to control his lawsuit and appointing a guardian ad litem to represent him. The Fifth Circuit Court of Appeals agreed and stated:
 "Our question is whether the district court erred in failing to provide Thomas a hearing before declaring him incompetent and appointing a guardian ad litem. At a minimum, the due process clause of the Fifth Amendment requires some hearing. Thomas doubtless had a protected liberty interest in pursuing the suit as a principal. The declaration of incompetence endangered his `good name, reputation, honor, or integrity,' Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), and deprived him of the power to control the lawsuit:
 "`A guardian ad litem is authorized to act on behalf of his ward and may make all appropriate decisions in the course of the specific litigation. . . . [T]he guardian may make binding contracts for the retention of counsel and expert witnesses and may settle the claim on behalf of his ward.'"
United States v. 30M Acres of Land, 795 F.2d 796, 805
(9th Cir. 1986) (citation omitted).
"Given a cognizable liberty interest, the considerations set forth in Mathews v. Eldridge, 424 U.S. 319, 335,96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), govern the type and the scope of the process due Thomas:
 "`First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requisites would entail.' *Page 1040 
We are persuaded that the appointment of a guardian ad litem here deprived Thomas of due process.
 "In May of 1986, the defendants moved for appointment of a guardian ad litem under Rule 17(c) [, Fed.R.Civ.P.,] or, in the alternative, for a psychiatric examination of Thomas under Rule 35(a) [, Fed.R.Civ.P.] Thomas responded; the defendants filed a supplementary brief. On June 13, without hearing argument, the district court ordered Thomas to undergo psychiatric and psychological examinations. A psychiatrist and psychologist chosen by the defendants conducted the examinations. On October 23, 1986, after reviewing the reports, the district court declared Thomas incompetent. Thomas received no notice other than that provided by the motion filed on May 16; he had no opportunity to review the psychiatric and psychological reports on which the court relied; and he had no opportunity to argue or present evidence.
 "The hearing required to determine whether a litigant is competent is not universal. See Mor[r]issey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (`[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'), quoted in Mathews, 424 U.S. at 334, 96 S.Ct. at 902. A full adversary hearing probably is not necessary, however. The appointment of a guardian ad litem deprives the litigant of the right to control the litigation and subjects him to possible stigmatization, but it does not altogether deprive him of his day in court. Nonetheless, due process mandates some type of hearing. Moreover, providing a litigant the opportunity to review and rebut his opponent's allegations and to introduce written or testimonial evidence of his sanity would not unduly burden the district court and would improve the accuracy of its determination. Thus, at a minimum, Thomas should have been given notice and an opportunity to be heard."
916 F.2d at 1033-34 (emphasis added; footnote omitted).
The Fourteenth Amendment to the United States Constitution
extends the application of the Due Process Clause of theFifth Amendment to the actions of the states. Accordingly, in the case now before us, the wife was entitled to a hearing before the trial court found her incompetent to control her lawsuit and appointed a guardian ad litem to represent her. See Thomasv. Humfield, supra. Therefore, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, J., concurs.
CRAWLEY, P.J., concurs specially, with writing.
MURDOCK, J., concurs in the result, without writing.
PITTMAN, J., dissents, with writing.