Michaelene J. SCANNAVINO, Plaintiff,

v.

**FLORIDA DEPARTMENT OF CORRECTIONS, et al.,**
Defendants.

No. 8:05–cv–684–T–23TBM.

United States District Court,
M.D. Florida,
Tampa Division.

April 30, 2007.

John A. Shahan, Law Offices of John A. Shahan, Tarpon Springs, FL, for Plaintiff.

Anthony A. Hayden, Cheryl J. Lister, Paul M. Quin, Saxon, Gilmore, Carraway, Gibbons Lash & Wilcox, P.A., Tampa, FL, Matthew John Jowanna, Matthew J. Jowanna, P.A., Wesley Chapel, FL, for Defendants.

Peggy Conrad, New Port Richey, FL, pro se.

### ORDER

MERRYDAY, District Judge.

A February 1, 2007, order (Doc. 130) granted in part the defendants' motions (Doc. 109, 122) and required the plaintiff to submit, on or before March 1, 2007, to an indepen-

---

1. The court provided a copy of Dr. Taylor's report to the plaintiff's attorney on March 29, 2007

dent medical examination (the "examination"). On February 20, 2007, the plaintiff submitted to an examination by Dr. Donald R. Taylor, Jr. ("Dr. Taylor"), who subsequently provided the court with a report summarizing the findings of his "Forensic Psychiatric Evaluation" of the plaintiff.[1] Because Dr. Taylor's findings (in addition to an array of circumstances described in the February 1, 2007, order) raised a substantial question as to the plaintiff's competency, an April 2, 2007, order (Doc. 136) noticed a full evidentiary hearing for April 25, 2007, to determine the plaintiff's competency. The evidence adduced at the hearing and the balance of the record establish that the plaintiff lacks the ability to adequately understand the meaning and effect of the litigation.

## I.

No universally recognized measure determines a civil litigant's competency. *Thomas v. Humfield,* 916 F.2d 1032, 1034 (5th Cir.1990). Although Rule 17(c) provides no standard for determining a party's competency, Rule 17(b) states that the capacity of a party to sue or be sued "shall be determined by the law of the party's domicile." Fed. R.Civ.P. 17(b); *Thomas,* 916 F.2d at 1035 ("[W]e interpret the term 'incompetent person' in Rule 17(c) to refer to a person without the capacity to litigate under the law of his state domicile and, hence, under Rule 17(b)."). The undisputed record evidence establishes that the plaintiff is a domiciliary of Florida residing at 5027 Bow Lane, New Port Richey, Florida.

Section 744.3215(3)(b), Florida Statutes, provides that the right "to sue and defend lawsuits ... may be removed from a person by an order determining incapacity." Fla. Stat. § 744.3215(3)(b) (2006). Although Section 744.331, Florida Statutes, describes a lengthy administrative procedure for a determination of incapacity, the statute fails to define either "incapacity" or "incompetence." *See* Fla. Stat. § 744.331 (2006); *McJunkin v. McJunkin,* 896 So.2d 962, 963 (Fla. 2d DCA 2005) ("Florida Statutes do not define 'capacity.'"). Section 744.102(10), Florida Statutes,

(during an informal chambers conference with the parties' counsel).

defines an "incapacitated person" as "a person who has been judicially determined to lack the capacity to manage at least some of the property . . . of such person." Fla. Stat. § 744.102(10) (2006). Finally, Section 744.331(6), Florida Statutes, permits a court to determine a person's incapacity only by "clear and convincing evidence." Fla. Stat. § 744.331(6) (2006); *Poteat v. Guardianship of Poteat,* 771 So.2d 569, 571 (Fla. 4th DCA 2000).

■ Although under Rule 17(b) a district court determining a party's capacity must use the law of that party's domicile, the court need not adopt any procedure required by state law but must only satisfy the requirements of due process. *Cohen v. Office Depot, Inc.,* 184 F.3d 1292, 1296 (11th Cir.1999) (explaining that "if the state law conflicts with a federal procedural rule, then the state law is procedural for *Erie/Hanna* purposes regardless of how it may be characterized for other purposes."); *Thomas,* 916 F.2d at 1035 ("[W]e reject the notion that in determining whether a person is competent to sue in federal court a federal judge must use the state's procedures for determining competency or capacity."). In the absence of a clear test for determining a party's incapacity or incompetence under Florida law, "a federal procedure better preserves the integrity and the interests of the federal courts." *Id.* at 1035.

■ "It is a well-understood tenant of law that all persons are presumed to be competent" and that the "burden of proof of incompetency rests with the party asserting it." *Weeks v. Jones,* 52 F.3d 1559, 1569 (11th Cir.1995). Because "[a] person may be competent to make some decisions but not others," the test of a party's competency "varies from one context to another." *U.S. v. Charters,* 829 F.2d 479, 495 n. 23 (4th Cir.1987). In general, "to be considered competent an individual must be able to comprehend the

nature of the *particular conduct* in question and to understand its quality and consequences." *Id.* (quoting B. Freedman, *Competence, Marginal and Otherwise: Concepts and Ethics,* 4 Int'l. J. of L. & Psychiatry 53, 56 (1981)). In the context of federal civil litigation, the relevant inquiry is whether the litigant is "mentally competent to understand the nature and effect of the litigation she has instituted." *Bodnar v. Bodnar,* 441 F.2d 1103, 1104 (5th Cir.1971); *Donnelly v. Parker,* 486 F.2d 402, 407 (D.C.Cir.1973) (stating that Rule 17(c) may require an inquiry into the plaintiff's "capacity to understand the meaning and effect of the litigation being prosecuted in her name").[2]

## II.

■ The plaintiff has a long and well-documented history of mental illness. Both the complaint (Doc. 1) and the amended complaint (Doc. 52) describe the plaintiff as an emotionally fragile and psychologically disabled person. Indeed, the plaintiff's counsel argues for a tolling of the applicable statute of limitations in this action because of the plaintiff's long-term mental incapacity (Doc. 17 at 14–15; Doc. 33 at 15). Before commencing this action, on four separate occasions from March 26, 2001, through February 9, 2005, the plaintiff was involuntarily committed pursuant to Section 394.463, Florida Statutes ("the Baker Act").[3] Subsequent to commencing this action, the plaintiff was committed pursuant to the Baker Act in October, 2005, to a psychiatric hospital. *See* Doc. 37; Doc. 102 at 2 ("Ms. Scannavino is currently hospitalized and has had multiple hospitalizations [and] Baker Acts due to physical and mental disabilities."). Most recently, on October 8, 2006, the plaintiff was committed (again, pursuant to the Baker Act) to Harbor Behavioral Health after she was discovered "walking through parking lots, banging on things, and screaming irrational-

---

2. Nothing in this order adjudicates the plaintiff's general competency. *Eagan v. Jackson,* 855 F.Supp. 765, 775 (E.D.Pa.1994) ("Rule 17(c) deals only with the protection of incompetents in their status as parties, and gives no general powers over their persons or property.").

3. The Baker Act provides that if upon examining a person within the preceding forty-eight hours a mental health professional certifies that the person meets the criteria for involuntary examination, "a law enforcement officer shall take the person . . . into custody and deliver him or her to the nearest receiving facility for involuntary examination." Fla. Stat. § 394.463(2)(a) (2006).

ly," at which time the plaintiff admitted to failing to take her prescribed medication for the previous four months.

The plaintiff's mental incapacity has twice precluded mediation of this action. Peter Grilli, a seasoned and judicious mediator, twice attempted and twice failed to mediate the plaintiff's claims against the defendants. Following each attempted mediation, Mr. Grilli filed a mediation report stating that the mediation was cancelled pursuant to Rule 10.310(d), Florida Rules for Certified and Court–Appointed Mediators, which rule requires cancellation of a mediation if "for any reason a party is unable to freely exercise self-determination" (Doc. 56, 107).

During the April 25, 2007, competency hearing, the defendants called Dr. Donald R. Taylor, Jr. ("Dr. Taylor"), a board-certified forensic psychiatrist with eighteen years of experience. Dr. Taylor performed a psychiatric examination of the plaintiff on February 20, 2007, which examination yielded a thirty-four page report summarizing Dr. Taylor's findings. Dr. Taylor testified that the plaintiff suffers from schizo-affective bi-polar disorder, which is "characterized by persecutory and grandiose delusional beliefs that in my opinion have an adverse impact on her ability to understand things and to make rational decisions" (Doc. 153). Among Dr. Taylor's findings were that the plaintiff "has significant impairment of her ability to concentrate, retain information, behave appropriately, or make rational decisions" (Doc. 153). Dr. Taylor's report concludes, "It is my opinion that she does not have a rational and factual understanding of the proceedings and is unable to consult with her attorney with a reasonable degree of rational understanding. In summary, it is my opinion that the claimant is incompetent to understand the nature and effect of the litigation."

The plaintiff's counsel offered no expert testimony to rebut Dr. Taylor's findings but instead called only the plaintiff's alleged fiancé, Fernando Gutierrez ("Gutierrez").[4] Gutierrez testified that he first met the plaintiff in 1995 during his delivery for Sears of an

appliance to her home, shortly after which time Gutierrez quit his job and began living with the plaintiff. Pasco County Sheriff's Office records evince numerous domestic disputes between the plaintiff and Gutierrez, including reports of domestic violence and battery by Gutierrez against the plaintiff (Doc. 109, Ex. E). Also, the plaintiff's medical records reveal that the plaintiff has reported to emergency room personnel and other medical staff that she fears Gutierrez because of his abusing her physically and mentally and stealing her money (Doc. 109, Ex. F).

On the issue of the plaintiff's competency, Gutierrez testified that the plaintiff (1) successfully attended (accompanied by Gutierrez) a real estate closing in 2002 to procure a second mortgage on her home, (2) once held a license as a real estate salesperson (although her license is presently inactive), (3) once designed a logo for her business, (4) "normally know[s] what season it is," (5) cleans her own house, (6) uses a computer, and (7) cares for her pet cocker spaniel. Even if believed, neither any nor all of this anecdotal "evidence" presented by a highly interested layperson (who benefits from living in a home paid for by the plaintiff) provides an adequate basis for the court to reject Dr. Taylor's informed and professional opinion that the plaintiff lacks the present ability "to understand the nature and effect of the litigation she has instituted." *Bodnar,* 441 F.2d at 1104.

The remainder of Gutierrez's testimony is either self-contradictory or contradicted elsewhere in the record. For example, Gutierrez testified that the plaintiff routinely pays her own bills, negotiates payment arrangements with her creditors, and attends to her medical and psychiatric appointments. However, Gutierrez also testified that he has intermittently held a power of attorney over the plaintiff since 1997 and that he has accompanied the plaintiff to "every single one" of her mental health appointments. Asked why the plaintiff needed a power of attorney, Gutierrez answered:

4. Since 2000, Gutierrez has worked as the sole employee of the plaintiff's attorney in this case, John Shahan, Esq. At the hearing, Gutierrez admitted to working for Mr. Shahan on the instant action and assisting in the drafting of relevant pleadings and papers.

Because when she was having seizures she was in the hospitals, and sometimes you have to make payment arrangements on bills. If she couldn't do her bills because she was behind at a facility, then she needed somebody on the outside to help her administrate her home.

Gutierrez's answer confirms the obvious: an individual who has been involuntarily committed to a psychiatric hospital on at least six separate occasions during the past six years is incapable of handling her own affairs. In sum, the accumulated evidence establishes that the plaintiff does not routinely attend to her own affairs but rather is highly dependent on others to assist with some of her most basic needs.

After both parties rested, the plaintiff appeared as the court's witness. During her "testimony," the plaintiff appeared abnormally loquacious, emotionally fragile, and insufficiently lucid. She spontaneously claimed to have suffered at least eighteen grand mal seizures as a result of her "trying to get off Xanax." The plaintiff not only mistook the court-appointed mediator in this case, Mr. Grilli, for an attorney from her divorce proceeding, but she mistakenly "recognized" the court reporter as someone whom she knew. Responding to concise and direct questions from the court, the plaintiff rambled indiscriminately, her "answers" ranging from observations about the 1970's television show *M\*A\*S\*H* to anecdotes about "Sonny" (the plaintiff's pet Yorkshire terrier), who reportedly died from ingesting a "poisonous bullfrog." Finally, the plaintiff was unable even to state her age despite her presumably successful memorization of her date of birth.

Measured against both Dr. Taylor's unrebutted expert testimony and the demeanor of the plaintiff during the hearing, Gutierrez's testimony lacks both credibility and weight. Dr. Taylor's examination, report, and testimony clearly and convincingly establish the plaintiff's incapacity for sustained and rational decision-making. Nothing in Gutierrez's testimony either undermines the correctness

of Dr. Taylor's expert opinion or identifies any possible bias in Dr. Taylor's appraisal of the plaintiff's competency. "[W]here, as here, the expert testimony so clearly and overwhelmingly points to a conclusion of incompetency, the [court] cannot arbitrarily ignore the experts in favor of the observations of laymen." *Strickland v. Francis*, 738 F.2d 1542, 1552 (11th Cir.1984); *Brock v. United States*, 387 F.2d 254, 257 (5th Cir.1967) (holding that "some reason must be objectively present for ignoring expert opinion testimony which is sought to be rebutted only by the observations of laymen"). The defendants have established by clear and convincing evidence that the plaintiff is mentally incompetent "to understand the nature and effect of the litigation she has instituted." The evidence permits no other conclusion.

### III.

▪ The rights of an incompetent litigant in a federal civil proceeding are protected by Rule 17(c), Federal Rules of Civil Procedure, which provides that a district court "shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Fed. R.Civ.P. 17(c). An incompetent litigant is "not otherwise represented" under Rule 17(c) if she has no "general guardian, committee, conservator, or other like fiduciary." *Neilson v. Colgate–Palmolive Co.*, 199 F.3d 642, 656 (2d Cir.1999). The parties stipulated at the competency hearing that the plaintiff lacks a general guardian and is not otherwise represented within the meaning of Rule 17(c).

▪ The decision to appoint a "next friend"[5] or guardian ad litem rests with the sound discretion of the district court and will be disturbed only for an abuse of discretion. *In re Kloian*, 179 Fed.Appx. 262, 265 (6th Cir.2006) (quoting *Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir.1989)). Unlike a determination of competency, a district court's

---

**5.** "Technically, an incompetent plaintiff sues by a *prochein ami*, or 'next friend,' and an incompetent defendant defends by a guardian ad litem." *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 198 n. 1 (2d Cir.2003). Because Rule 17(c) appears to have abandoned this distinction, this order uses "guardian ad litem" to include "next friend."

decision whether to appoint a guardian ad litem is purely procedural and wholly uninformed by state law. *Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 135–36 (3d Cir. 2002) ("A district court need not look at the state law, however, in determining what factors or procedures to use when appointing the guardian ad litem."); *Burke v. Smith,* 252 F.3d 1260, 1264 (11th Cir.2001) ("It is well settled that the appointment of a guardian ad litem is a procedural question controlled by Rule 17(c).").

 Under Rule 17(c), a district court must appoint a guardian ad litem if it receives "verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Ferrelli v. River Manor Health Care Ctr.,* 323 F.3d 196, 201 (2d Cir.2003). An exhaustive review of the record, as well as the evidence adduced at the competency hearing (and other evidence properly before the court), commends the appointment of a guardian ad litem to protect the plaintiff's interests in this case. Indeed, failure to appoint a guardian ad litem undermines the plaintiff's interests and would default both the court's obligation under Rule 17(c) and the requirements of justice.

 Accordingly and pursuant to Rule 17(c), the court appoints Rochelle A. Reback, Esq., 405 W. Azeele Street, Tampa, Florida, as guardian ad litem for the plaintiff. The sole purpose of the appointment of a guardian ad litem "is to protect the interests of the incompetent person." *Richards v. Duke University,* 166 Fed.Appx. 595, 599 (3d Cir. 2006). The appointment of a guardian ad litem "deprives the litigant of the right to control the litigation." *Thomas,* 916 F.2d at 1034. "A guardian ad litem is authorized to act on behalf of his ward and may make all appropriate decisions in the course of the specific litigation." *Thomas,* 916 F.2d at 1034. As guardian ad litem, Ms. Reback may enter into "binding contracts for the retention of counsel and expert witnesses and may settle the claim on behalf of [her] ward."

*Thomas,* 916 F.2d at 1033 (quoting *United States v. 30.64 Acres of Land,* 795 F.2d 796, 805 (9th Cir.1986)).[6] Ms. Reback's services as guardian ad litem are compensable at the then-current rate under the Criminal Justice Act, 18 U.S.C. § 3006A(d) (2007).

The parties shall appear for status on **Thursday, May 31, 2007, at 1:30 p.m.** in Courtroom 15A, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida. Ms. Reback shall meet and confer with the plaintiff as necessary and shall promptly report any interference (by any person, party, or counsel) with her duties as guardian ad litem. Pursuant to Rule 25(b), the Clerk is directed to substitute Ms. Reback (in only her capacity as guardian ad litem of the plaintiff, her ward, and not personally) as the named plaintiff in this action.

---

**6.** A guardian ad litem is not appointed to serve as counsel but to "act for the [ward] in the cause, with authority to engage counsel, file suit, and to prosecute, control, and direct the litigation." *Noe v. True,* 507 F.2d 9, 12 (6th Cir.1974).